Good morning, Your Honor. May it please the Court. Patrick Booker brought this 1983 action to challenge retaliation for pursuing a grievance under his prison's established grievance procedures. The District Court held that the defendants are entitled to qualified immunity for one reason. There is no published case of this Court, the Fourth Circuit, recognizing a First Amendment to pursue a grievance. That was incorrect. A constitutional right may be clearly established by a consensus of cases from other circuits. In this case, Your Honor, I think that's a good question. What the District Court said is it cited the Edwards case, which was relying on the en banc decision in Jean that did have language that said, Oh, excuse me, Your Honor. So sure. So that question is Adams is raised on appeal by the defendants to say that despite the consensus in the other circuits, this Court follows a rule that essentially says under the First Amendment, it is okay to retaliate against an inmate for following grievance procedures. Adams says that? Or retaliate? Adams is a retaliation? It's not, Your Honor, and that's precisely my point. So to step back for a minute, Adams is not a First Amendment case at all. It doesn't discuss the First Amendment. It's a case that, as this Court noted in Adams, it was sort of an unusual, the facts were clearly frivolous. The idea was that the prisoner was complaining. He said he wanted protective custody. He wasn't granted protective custody, and then he was denied protective custody for asking for it, and this Court said, That doesn't make any sense. It then went on and said as a legal matter that the inmate in Adams had decided belatedly to frame this as an Eighth Amendment, what he called a right to inform, and what this Court treated that as is essentially he is saying that he was entitled to a particular type of grievance procedure, essentially an ad hoc made up by this prisoner. He was demanding a right to inform of particular conditions in the way that he saw fit, and this Court said, You're not entitled to that grievance procedure. You don't have a constitutional right to that. So you would propose that it be distinguished solely on the basis that it applied to Eighth Amendment claims and not First Amendment claims of a right to participate in the grievance process? Your Honor, I would say a few things. The first is that the Court wasn't purporting to announce a rule about the First Amendment because it didn't talk about the First Amendment. The second point that I would make is that there is a difference between a case where there are established grievance procedures. That's what we have here. The inmate attempts to follow those procedures, goes through it, and then is punished by prison officials for essentially taking advantage of the grievance opportunities allowed by the prison. That's this case. What Adams is, is it's not that. It is a case where essentially the prisoner is making it up as he goes along and saying, I have a right in my own fashion to present this complaint as I see fit. What concerns me about Adams is the language is so broad. You know, you don't see the usual qualifying language that in this context or whatever is some bright, broad statements. Your Honor, I think there is language in Adams that does specifically speak to demanding a particular grievance procedure. There is certainly some dicta that could be read more broadly. I think one In fact, we read it more broadly in an unpublished decision in Rubenstein, didn't we? Your Honor, this Court's unpublished decision in The case? Excuse me? Day v. Rubenstein? I'm not sure if this It was said there, and admittedly, this is an unpublished decision that had to do with the grievance case. We said, we applied Adams v. Rice to conclude that, quote, because prisoners do not have a constitutional right of access to the grievance process, the inmate's expression of dissatisfaction was not constitutionally protected. Now, that's an unpublished decision, but it reads Adams fairly broadly. There's another unpublished decision that goes the other way. I think it predated Adams. My point, though, is that how is an officer supposed to decipher all of this case law? You say that there's a, you know, a sort of consensus emerging among the other circuits that suggests that there is a, that a grievance process does implicate a constitutional right, but we're talking about a layperson attempting to sort of sort through these cases, and why wouldn't it at least suggest that an officer would be entitled to qualified immunity given the current state of the law, this conflict between what our cases seem to suggest and what the other circuits seem, where they seem to be headed? Thank you, Your Honor. If I could take that in a couple parts. First, just in terms of how Adams has been applied in this circuit, certainly the case that you mentioned, the Taylor case that's cited in the brief is another one, and in the Taylor case and in the language that you just quoted, the concern there is about dissatisfaction with the way the grievance procedure is handled, and that, I think, is what is the fundamental distinction between what this case is about and what Adams and its progeny are about. Those are cases... Well, it doesn't say, I mean, the Day case doesn't talk about the way it's handled. It says, prisoners do not have a constitutional right of access to the grievance process, period. Correct, Your Honor, and I think, I agree that it may be possible to read that as a sort of blanket view that, of the First Amendment, sort of saying you only get access to courts, that's all you get. You don't have a right to use grievance procedures. Well, see, that's the problem, though. If you can read it that way, then why couldn't a layperson correctional officer read it that way? Your Honor, I would say a few things in response to that. First of all, an officer, it is to some extent a legal fiction that the officer will be poring over the Adams case versus the cases in these other circuits. I think what the reasonable officer would do is look to the reasonable department, and the Department of Corrections, it's its responsibility, look at the cases in the circuit, look, is there a consensus? And the Department of Corrections did that here. It says very clearly in its policies, you may not retaliate for the filing of a grievance. So that is not a rule of constitutional law, of course, but I do think what it shows is that someone higher up who does have the responsibility in the Department of Corrections to distill all of these principles, I don't think the officer can be expected to have consulted Adams one way or the other. But what the department did is it read presumably all of this authority, and it said, we're going to establish a bright line rule, and what the officer in this case should have done. You're saying that the Department of Corrections, by establishing a grievance policy and setting out rules, is creating a constitutional right? Your Honor, I didn't mean to suggest that. You do or do not? I do not mean to suggest that anything that the department writes down is establishing a constitutional right. I'm not sure it does tell you the truth, but I'm just trying to know what your position is. Your Honor, if you'd like to hold that, I certainly won't object to it. But I do think what, I mean, Judge DeAnne has asked a very fair and very practical question, which is how on earth is a prison official supposed to wrap his or her arms around this body of law. We know from the Supreme Court that it's not just what this Court says. You can look at a consensus of persuasive authority. I don't think anyone expects your average prison officer to fire up Westlaw when, oh, can I retaliate? I better see what the Seventh, Second, and Tenth Circuits say about this. Well, what you're suggesting, you're suggesting that because the Seventh Circuits have their laws that may or may not be different from ours, the officer should be aware of that and held to it. That's unrealistic. Your Honor, it is, I think it is, to answer the practical question, do I think that that is what the officer is going to do? No. But we need some guidelines to figure out what a reasonable officer would do. And we know from the Supreme Court in Wilson v. Lane that a clear consensus of persuasive authority does constitute clearly established law. My point about the prison manual in this case is simply that my suspicion is that the reason that is there, apart from it being good policy, is that someone is responsible in the South Carolina Department of Corrections and is trying to come up with guidance for the individuals in the line of duty so that they don't have to go to Westlaw, they don't have to count up circuits. And it is clear as day on the face of their policies, don't retaliate for filing grievances. I think that's how in practice they would know. Your Honor, if I can continue on Adams v. Rice, I think one thing that this Court could look to is the Eighth Circuit and the way it has treated this distinction that I've been drawing between the right not to be retaliated against for following a prison's established grievance procedures, on the one hand, as in this case, versus the Adams scenario where you're essentially making it up as you go along. I'm a prisoner. I get to barge into the warden's office and ask for what I want. I get to complain about if the grievance procedure wasn't followed to the letter, et cetera. And what Adams relied on principally was the due process Bivens case where the prisoner was claiming, I have a right to these grievance processes being followed under due process. And what the Court there says is, no, that doesn't give rise to a liberty interest. You can't come, similar to, you could draw an analogy to parole cases. You can't come and say, I had a right to the processes going in a certain way. And because I'm dissatisfied with the result, and that's exactly the language that Judge Diaz quoted from another case, I get to come and complain about how the grievance process went. All right. Let me, I'm sorry to interrupt. No, absolutely. Interrupting people on a roll, but you're about to run out of time. The problem I have accepting your argument that Adams should be limited to an Eighth Amendment context is because it relies on FLIC, CITES FLIC, which is not an Eighth Amendment case. So help me. Sure. How do I get around Adams when it doesn't rely on an Eighth Amendment case and CITES a due process case? Exactly. And I think it is an Eighth Amendment case that CITES a due process case, none of which is a First Amendment case. I think Adams was proceeding under the Eighth, sort of what the Court recognized was a kind of bizarre Eighth Amendment claim. It was trying to sort out what this was, and it looked to this Eighth Circuit Fifth Amendment case. And the ultimate point I has reconciled this. There's a whole line of cases in the Eighth Circuit that is part of this broad consensus that says there is a First Amendment to proceed under established grievance procedures without being subject to retaliation. And I don't think the Eighth Circuit has ever said we overrule FLIC. There's a tension between this line of cases and FLIC. They just view these as totally separate issues. And I think the decision of this Court to follow FLIC can be reconciled in exactly the same way. Your Honor, I would note if this Court is troubled by Adams, I think one solution to this, there are a few. This is a new argument by the defendants on appeal. They actually did cite Adams in the District Court, but for a different proposition, a sort of boilerplate, you can't have bare assertions of retaliation. You need to come with something more. So I'm not sure that they've preserved reliance on it. And if the suggestion really is, well, the officer could reasonably have been relying on Adams because there was some ambiguity in this Court's precedence, you would have expected that argument to have come out earlier. In fact, the way this developed at one point, you actually had a concession from the defendants that, no, there is a clearly established right not to be retaliated against for filing prison grievances. That was there. They backtracked that after this Court's remand. And instead what they then said is, well, yeah, there is a right, but it's not clearly established. And now we have this notion that there is effectively a seven against one circuit split where in seven circuits there is this recognized First Amendment right to pursue grievances without retaliation. But this Court is sort of the lone holdout. I would respectfully suggest that that's not the best way or even a fair way of looking at Adams, particularly when it's come up so belatedly in this case. I think, of course, this Court, it would certainly be helpful, regardless of what this Court says about the qualified immunity, it is in this Court's discretion to go in any order. There's not the satie requirement that it rule on the constitutional question, the existence of the constitutional right first. It certainly could reach that first, though, if this Court wanted to settle any uncertainty that it thought was there in the law and decide that, in fact, Adams is distinguishable and this Court is not really at odds with all seven other cases. It wouldn't help your client much, though. Your Honor, what I was going to suggest is that I think it would help my client in the sense that you could go on from there and hold that perhaps the defendants, if they had properly preserved the argument that there was uncertainty in Adams and that the uncertainty in the law of this circuit was the problem. In that case, perhaps they may have been entitled to qualified immunity, but this Court could essentially hold the right is there, it exists, and there hasn't been an argument preserved by the defendants that there's too much uncertainty in this circuit. You'd have to call your client and say, I've got good news and bad news. Well, Your Honor, I certainly hope, for my client's sake, that if this Court were to to rule that this constitutional right does exist, the right not to be retaliated against for filing a prison grievance, and that whether or not Adams might have put someone else on notice if that argument were properly preserved, the way this case has been litigated as being simply a situation where there was no guiding precedent in this Court, one way or the other, that that defense is not there. Did you make that preservation argument in your brief? Your Honor, we explained in our brief that this was a belated argument. I don't know that we specifically used waiver language, but we did explain in our brief that the way this case has been litigated has changed from the defendant's perspective. It started off with a clear concession, not only that this right existed, but that it was clearly established, and it has sort of eroded from there and really only here. The question for this Court is certainly to your discretion to look at the way this case has been litigated and say that the defendants have not preserved this argument, that the reason they felt themselves free to retaliate against my client is because they read language in the Adams case especially broadly. Thank you, Your Honor. Mr. Freeman? Thank you, Your Honor. May it please the Court? I'm Mike Freeman. It's my privilege to represent South Carolina Department of Corrections today. What I'd like to do with the leave of the Court is to address the arguments that Mr. Zions was just making now about whether or not the issue was preserved and then go into a discussion about consensus argument that the plaintiff makes in this case. First of all, with respect to whether or not the issue is preserved, we are here on an appeal from the grant of summary judgment from the District Court basically on two issues. One was whether or not the right was particularly identified by the plaintiff in this case. I know this wasn't raised in counsel's arguments, but there was an issue in the briefing about whether or not the right should be expanded beyond the raised in his complaint to include a broader right to petition the government for address, which was raised at the objections to the report and recommendation of the magistrate judge. The additional grounds for summary judgment that the District Court raised was the clearly established standard, which we've been talking about this morning. It's the defendant's position that it is improper for the plaintiff to first look for a consensus of opinion within the other circuits. The Ashcroft v. Al-Kid case specifically states that you must first look to the law in your own circuit before you may look to a consensus of controlling authority in other circuits. The Ashcroft case actually, what it explicitly says is what is necessary absent controlling authority is a robust consensus of cases of persuasive authority. It says it twice within the opinion. Our position, Your Honor, is that there is applicable rulings within this circuit regarding this specific issue. I know we've cited Adams v. Rice as the progenitor of this position within the Fourth Circuit. Judge Diaz, you referenced the Day v. Rubenstein case. There are a number of other cases within the District Courts, some of which are published, the broad majority of which are unpublished, both within the District Courts and within this Court itself. These cases examine the issue of Adams not just within an Eighth Amendment right, but broadly state in several cases there exists no constitutional right to a prison grievance system under the First Amendment or under any statute, including 1983, for the purposes of bringing a retaliation claim. You say these cases, Adams doesn't say that, does it? Adams does not say that, but the cases that have evaluated Adams and have interpreted Adams since its adoption in 1994 specifically examine the Adams holding outside of this argument that it's applicable solely to the Eighth Amendment and look at it in terms of other amendments to the Constitution as well as the statutes under 1983 that retaliation claims are brought. And those cases don't just say there is no First Amendment right or there is no Fourteenth Amendment right or there is no Eighth Amendment right. They state those specifically, but also the broadly there is no right under any amendment of the Constitution to the grievance procedure. But none of those cases represent precedent for this Court. None of those cases are binding precedent because the only published opinions that we were able to within this district. However, this goes to somewhat of a novel argument. Binding precedent upon this Court obviously comes from the Court itself, from the United States Supreme Court in published opinion. The argument on qualified immunity is what a reasonable state actor would have or should have known at the time that the action was taken. I am, by trade, not an appellate lawyer. I think that that might be plainly obvious. I make my living in the state courts and in the federal district court in South Carolina. I'm a trial lawyer by trade. The broadest sense that a state actor, particularly an employee with the Department of Corrections or any other state actor would come into contact with a court opinion would probably be from a trial court in the state or in the district and quite possibly in an unpublished opinion. I would cite unpublished opinion, including the Day case, for the proposition kind of like hearsay, not for the reason asserted, not to prove the matter asserted, but instead to show that there was a general disagreement of knowledge between this circuit and the other seven circuits that would be more applicable to a state-level actor. Your Honor cited the Day decision, which is a very important one and is very much on point with respect to the First Amendment and its application under the Rice case. I would also point out, Your Honor, that Mr. Booker himself in Booker v. Jenkins brought this exact same claim on very similar circumstances, and it was related to a First Amendment case. This case came up before the Fourth Circuit in a purcurium decision. It was said that there was no error of law and therefore the appeal was denied. The survey of the law that we have been able to do from 1994 when Adams was adopted to November of 2010 when this incident occurred shows us generally that there were a number of cases that within the context of the Adams v. Rice. I'm sorry, I've gotten the wrong page of my notes, but the courts since 2010 have examined the same issue and have continued to hold that Adams v. Rice does not apply simply to Eighth Amendment rights, but as to all of the amendments of the of course, what Ms. Jones or any of the other defendants in the case would have known at the time and place of the incident in November 8, 2014. There is, like I said, a broad depth of unpublished opinion, including but not limited to the Backus v. Manny case, which is an unpublished opinion of the District Court, which occurred at Lieber Institution a month before this particular incident, where an inmate, the Backus in that case, submitted four requests to staff members, which threatened legal action against nurses and medical staff, for which he was, charge was brought, charge was ultimately dismissed by the warden and he brought a First Amendment claim in those cases. She said that the nurse in that case said that she felt threatened because he had threatened legal action in the court. The warden and the grievance counsel in that case found that that was not a sufficient threat of physical harm, much like in this case. The Backus court, citing Adams, said that there was no right to the grievance procedure and that he had failed to show a chilling effect regardless with respect to his access to the courts, which was an additional claim of his in that case, because he continued to file grievances and continued to file that court case in court. Your Honor, I think it's clear that the case law between Adams and 2010, when this incident occurred, shows that there was a general trend and explicit holding that the First Amendment right did not exist to the grievance procedure, including but not limited to the 1983 claim for retaliation. I believe that the case law at the time, immediately prior and immediately after the incident in 2010, shows that this circuit and the courts in the circuit and the district court were continuing to hold that the First Amendment applied, that the First Amendment did not apply to a grievance procedure and that there was no right there under. And I think that the cases since then have also held that there is still exists no right, including, as Your Honor cited the day Mr. Rubenstein, there's a recent case coming out of Virginia that is under appeal and is on the docket for this court, Wall v. R. Tripp, which actually cited this court's original summary judgment holding in this case from 2014, which said that while the court declined to enter an opinion as to whether Mr. Booker exercised freedom of speech, the court there found that even if the court had applied at that point in time, filing grievances could not be the basis of a retaliation claim in this circuit because of Adams. And that... Do you have a case, either in our circuit or other circuits, where this analysis that you're engaging in, that is looking at the entire landscape of decisions, published, unpublished, circuit, district, I know traditionally we look at state Supreme Court opinions as well, where a layperson, a prison official, can rely on that broad landscape of decisions and come to a conclusion, or at least the court can, that the right was not clearly established, the right in question. Do you have a case like that? That, I'm sorry, Your Honor, that is published or unpublished? Well, you're asking us to look at this whole landscape of cases, published, unpublished, circuit, district court opinions. Yes, sir. And traditionally the law, as I understand it, is limited to looking at circuit court precedent and controlling precedent from the state's highest court. Do you have a case that suggests that we can, at least for purposes of a prison official, looking at the legal landscape that he or she  If I understand Your Honor's question correctly, do I have a case that says what a reasonable state actor would be imbued with knowledge of in terms of, I don't. I don't have that. I don't know that that's been examined or clearly delineated. If it has, I have not found that case, Your Honor. What my argument in that respect is simply that there, In other words, before turning to this controlling precedent elsewhere, this sea of precedent that your opponents would suggest is conclusively demonstrates a trend outside of the circuit, is a prison official simply, is it appropriate for that prison official simply to focus on what's happening in the circuit not worry about those other cases? The standard, Your Honor, for qualified immunity, of course, contains the reasonableness. I don't have a case to cite to Your Honor that says that it is reasonable or unreasonable for a state actor to be expected to know what is happening at any level of the court system, whether it be at his own circuit court level, at the United States Supreme Court level, or at other circuits outside of his general jurisdiction. I would say, Your Honor, that applying reasonableness standard to a state actor, it would be most reasonable to assume that out of the panoply of courts that could enunciate a rule of law, they should be at the most charged with knowledge of what is happening within their own state. I would say that the most reasonable would be to assume that they would have some knowledge of what was happening in the locus of events occurred, and then expanding beyond that to the Fourth Circuit and to the other states of the circuit. That's, it's simply based on reasonableness, Your Honor. I don't have any case law to cite to that. Let me ask you a question. Yes, Your Honor. I don't think anybody would doubt that the Constitution guarantees citizens the right to access to the courts. Yes, sir. The prison here has established a grievance procedure and the law of the United States. If a prisoner wishes to come to court, he has to exhaust his grievance system and remedies before he can come to court. So if you can deny a prisoner the right to bring a grievance, aren't you effectively denying him access to the courts? Because if he hadn't brought his grievance and he tries to come to court, they're going to throw him out immediately because he isn't a denial of the right to file a grievance, effectively a denial for a prisoner of access to the courts. Your Honor, two things. First, I would state that in this particular case, the district court did not grant summary judgment on that issue in favor of the Department of Corrections because it found a question of fact existed as to whether or not Mr. Booker had, in fact, filed his Step 2 grievance in time in this matter. So I would say that, at least for purposes of this case, I don't think that's an issue that SCDC brings against Mr. Booker in terms of his failure to exhaust. I think in terms of the broader application of the requirement to exhaust your administrative remedies, the cases generally have said that the right to petition the government is the right to access to the courts, not the right to access to a grievance procedure. That is explicitly what the case law has said. I understand there can be some tension there between the Prisoner Rights Act that says that you have to exhaust your administrative remedies versus the Adams and its progeny that say you have no constitutional right to a grievance process and, therefore, failure of a institution. And this is the reading of Adams that is held beyond this circuit and to other circuits that the failure of a prison to follow a grievance procedure or to entertain your grievances as a prisoner is not indicative of a constitutional right. How does a prisoner come to court if he hasn't exhausted his administrative remedies? I haven't seen a case that examines that particular issue, Your Honor. I can show you a lot of cases that says you can't come to court until you've exhausted your remedies. I mean, we've just heard arguments questioning whether or not a prisoner has exhausted their remedies. Yes, sir. It's very important. It's critical. It's a requirement. And I understand it's fatal to many claims. I think that that's a tension that the court, perhaps this court in this opinion, has to address. I don't have an opinion on it or an opinion on the legal rights of the parties as they stand before you today. Well, what about Supreme Court precedent? Didn't the Supreme Court, is it never a rule that a prisoner can be denied rights to grievances? Has it? There is. The United States Supreme Court. Yes, sir. There is no United States Supreme Court opinion that I'm aware of that says that prisoners can be denied a grievance right. In fact, have they not positively said they do have that right to grievance on the First Amendment ground? Under the rights petition, and that has been interpreted differently by the circuits. Are you familiar with the Sandin v. Conner, 1995 case, Supreme Court case? I don't believe that I've reviewed that one for this case, Your Honor. Yeah, very familiar. They held against a due process clause that did not afford a prisoner protected liberty interest where the prisoner claimed prison officials wrongly sentenced him to 30 days in segregation in a holding cell. The Supreme Court noted in a footnote, however, that prisoners retain other protections from arbitrary state action, even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available. Where available? It's available in South Carolina. As a matter of fact, South Carolina, good question, just tried to ask. Their own policies. You can't be too sympathetic with the officials here when you look. Your own policy says you shouldn't retaliate against people who use grievance. That may not rise to a constitutional requirement, but certainly that's the first place you would look. And you see seven circuits, the consensus that there is such, and you have items which doesn't address First Amendment. I mean, Supreme Court has recognized that. I mean, first of all, isn't it counterintuitive? Would you want a system where someone, let's say, not South Carolina, any other state, of course, but hypothetically, there was corruption going on, and then you say that people is taking my money here, and I'm in grievance. And then, oh, no, no, you don't have a First Amendment right to grievance here. Don't we want people to have access for First Amendment? Protect the system? Go ahead. Under a right to petition the government for redress, Your Honor? Yeah, yeah, a prisoner to use the grievance procedure to do so. Yes, sir, Your Honor. Well, the issue of whether or not a right exists to petition the government, Flick v. Adams, which is not circuit law, has been held to not to be in tension with other holdings from other circuits. There's particularly a Pennsylvania case that I reviewed recently that says that there is no right to a grievance process even though Flick, even though the holding in Flick basically says that you have the right, prisoners retain the right to petition the government for redress. It doesn't include necessarily a compliance with or a duty on the state to adopt any sort of grievance procedure. Really, theoretically, under the current state of the law, if a state were not to have a grievance procedure for inmates, there would be no constitutional problem with that, theoretically. Likewise, the holdings have held that if a state is to adopt a grievance procedure, failure to comply with that grievance procedure does not implicate the right to petition the government because that right is specifically identified to be the right to access the courts. I understand Judge Traxler raises a good, a good issue with respect to how do you, how do you marry the two if you have a requirement to exhaust the administrative remedies before you have access to the courts? And my only reply to that, Your Honor, is that wasn't a particular issue here in this case and isn't implicated by, I think, the grant or denial of this court of a right under the First Amendment, freedom of speech, which is what was explicitly raised by the plaintiff in this case in terms of his arguments. Your Honor, I have a few seconds left. I have a couple of other points that I've briefed and I'll rely on the brief at this point. If the court has any other questions for me, I will answer them. Otherwise, I'll cede the rest of my time. Thank you, Mr. Freeman. Thank you, Your Honor. Thank you, Your Honor. Just a few points in response to make. And Judge Diaz asked a good question about sort of the analysis that the defendants are asking this court to engage in, which is essentially to kind of survey published, unpublished decisions throughout the district courts of this court. And I think I agree with some of the skepticism that was expressed that that's really a realistic way of doing the analysis. But to just sort of take that argument on its own terms, as I understand the defendant's argument, it's this saying, let's put to the side, there's no real disagreement that in seven other circuits, this is clearly established law, the right to pursue grievance procedures without facing retaliation. But because of sort of one way of reading Adams and the way the district courts in this circuit have then applied Adams, then it puts a reasonable officer could essentially rely on that. I think it breaks down when you actually look at this sort of line of cases that the defendants are referring to throughout the district courts. They have at page, starting on page 15 of their brief, a long string site of cases from the district court for the district of South Carolina, which the defendants say that helps us because the courts are not expressly recognizing this right. If you actually look at those cases, it really supports our reading of the landscape. And to take the Plummer versus Riley case that's cited in the briefs, again, I'm not referring to this as sort of binding precedent on this court, but to respond to this idea of what the landscape is. And a lot of these cases have similar language, but the Plummer case says, although the Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment, several circuits have held that prison officials may not retaliate. That's exactly my reading of the state of the law, which is no published opinion by the Fourth Circuit, lots of published opinions by the other circuits. And there's no mention here, in fact, I think this contradicts this idea that Adams is really leading the other way. Otherwise, you wouldn't have these statements throughout the cases that Mr. Freeman cites saying there is no published Fourth Circuit decision. So I think when you look at the full landscape, as the defendants are urging you to do, I don't think you see this groundswell in favor of reading Adams to create this very broad First Amendment rule saying, prison officials, go ahead, you have free reign to retaliate against prisoners who follow the grievance procedures that prison says is allowed. I just don't think that is a reasonable position for an officer to have taken, even granting that the general landscape in the district courts is relevant. I think, Judge Traxler, you had a good question about, isn't there a close relationship between the right to access courts and the right to file grievances? I think that's absolutely the case, in part for the reasons that you mentioned, and that these are not separate things. You need to go through the one to get to the other. Yeah, but your opponent says we can't use that because it's not briefed or raised. Sure, Your Honor. I would disagree with that. Certainly, we've raised on appeal extensively the argument that this implicates the right to petition the government for grievances. What the Supreme Court has said repeatedly, as the briefs explain, is that the right to access of courts isn't some free-floating constitutional right that they made up. It is a component of the right to petition for grievances. That's in the case. Which amendment? It's the First Amendment, the right to petition the government for redress of grievances. What I think the defendants were referring to is what the district court said was, well, you pled this. Mr. Booker had raised this originally as a free amendment versus the right to petition for grievances. As we explained in the brief, and their opposition didn't say much about this, the error there was that the district court construed the pleadings of Mr. Booker as a pro se plaintiff, not nearly liberally enough. This court has cases where there's no mention of any constitutional amendment. You'll say, oh, you mean to be raising an equal protection claim. I can't believe you'd accuse us of such a thing. But I think Mr. Booker came quite close. In fact, other courts, in this court and the unpublished gullet decision, have said, well, both rights are implicated. It's both speech and the right to petition. So I think if the suggestion by the defendants is you can't rely on this very close connection between the right to access of courts, which is part of a broader right to petition the government for grievances, I just don't think that is treating Mr. Booker's pro se pleadings in the district court charitably enough. If Your Honor doesn't have any further questions, we would ask the court to reverse the district court's grant of summary judgment on qualifying immunity grounds. Thank you, Mr. Zions. And also, note that you're a court opponent. Likewise, the court thanks you for your service, and we really appreciate your help in these cases. And note also, Mr. Freeman, your able representation of the Palmetto State. We'll ask the clerk to, during court for today, come down and greet counsel.
judges: Roger L. Gregory, William B. Traxler, Jr., Albert Diaz